UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BLAIR CLARK**,

    Plaintiff,

    v.                                                  Case No. 8:25-cv-444-WFJ-SPF

**DAVID BELL**,

    Defendant.

_____/

## AMENDED[1] ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant David Bell's Motion to Dismiss, Dkt. 16, regarding the Complaint filed by Plaintiff Blair Clark, Dkt. 1. Plaintiff has responded in opposition to this motion. Dkt. 18. The Court held a hearing on the pending motion on July 15, 2025. Dkt. 19. After careful consideration, the Court grants Defendant's motion to dismiss.

## BACKGROUND

This case arises out of the August 2, 2022, arrest of Blair Clark by the Lakeland Police Department. Dkt. 1 ¶ 20. The affiant who drafted the probable cause affidavit was Detective David Bell. Dkt. 16-1. Plaintiff extensively references the

---

[1] The Court has amended the conclusion.

affidavit in his Complaint; thus, factual allegations from both the Complaint and the probable cause affidavit will be considered by the Court.[2] Dkt. 1; Dkt. 16-1.

The following sequence of events is alleged to have been initiated by a police report by Alicia Storer on February 23, 2022. Dkt. 1 ¶ 9. When Defendant conducted an interview with Ms. Storer the following day, she advised him that certain equipment was stolen from her, with a total value of $36,000. *Id.* ¶ 10. That same day, Defendant also interviewed Ms. Storer's husband, Eric Storer. *Id.* ¶ 11. Some sort of agreement existed, wherein Plaintiff would securely store the equipment for the Storers on property owned by Plaintiff. Dkt. 1 ¶ 17(c); Dkt. 16-1 at 2.

According to the Storers, they owned this equipment. Dkt. 1 ¶ 10; Dkt. 16-1 at 2. They allegedly informed Plaintiff that they were ready to retrieve their equipment in October 2021, but that retrieval would have to be delayed. Dkt. 16-1 at 2. The Sorters then could not get in touch with Plaintiff, and later found some of their equipment for sale at Ritchie Brothers' Auctions. *Id.* The Storers claimed that Plaintiff verbally admitted that he sold the equipment to "pay bills," and that he later

---

[1] Ordinarily, when ruling upon a motion to dismiss, a court considers only the "four corners of the complaint" and the exhibits attached to the complaint. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *see Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, under the doctrine of incorporation by reference, a court may also consider a document outside the four corners if it "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024).

1

admitted the same over text. *Id.* A copy of the text message is attached to the probable cause affidavit. *Id.* at 5.

According to Plaintiff, the ownership of the equipment was never determined, and Ms. Storer admitted to him that she didn't own it. Dkt. 1 ¶¶ 13, 14, 17(a). Plaintiff further claims that he attempted to contact Mr. Storer before he took any action. *Id.* ¶ 11(a). Plaintiff then hired Allan Kitto to clear his property, who quoted Plaintiff $18,000 for the work and was paid via the equipment on the property. *Id.* ¶ 12. It is alleged in the affidavit that Mr. Kitto then brought the equipment to Ritchie Brothers' Auctions, where the Storers ultimately discovered it. Dkt. 16-1 at 2.

After interviewing the Storers, Defendant interviewed Mr. Kitto, who told Defendant about the agreement he had with Plaintiff to clear the property and provided an estimated valuation of under $3,000 for all the equipment. Dkt. 1 ¶ 12. Mr. Kitto is then alleged to have told Defendant that Ms. Storer admitted that she did not own the equipment. *Id.* ¶ 12(f).

Upon learning of this inconsistency, Defendant then interviewed Ms. Storer again, where she allegedly conceded that she previously lied, but that she really did own the equipment. *Id.* ¶ 13. She then provided Defendant with a copy of a text message sent by Plaintiff to Ms. Storer, which read: "Oh no I did i [sic] say that whoops I said that I sold your stuff stilly me...I love social media..." Dkt. 16-1 at 5.

2

From here, Plaintiff claims to have offered to give a statement to Defendant, but only with his attorney present. Dkt. 1 ¶ 16. The attorney and Defendant had an exchange, but Defendant ultimately failed to follow up to schedule an interview. *Id.* On June 13, 2022, Defendant then drafted a probable cause affidavit, which was provided to the State Attorney's Office. *Id.* ¶ 18; Dkt. 16-1. On August 3, 2022, a Direct Information for Grand Theft and Dealing in Stolen Property was filed, which then led to Plaintiff's arrest on August 4, 2022. Dkt. 1 ¶¶ 19, 20. On March 13, 2024, a Notice of Nolle Prosequi was filed, dismissing all charges against Plaintiff. *Id.* ¶ 21.

Plaintiff's Complaint now brings a singular count against Defendant under 42 U.S.C. § 1983 for malicious prosecution (Count I). Dkt. 1 at 6–7. Defendant's Motion seeks dismissal of the Complaint under Rule 12(b)(6),[3] arguing that the malicious prosecution claim is barred. Dkt. 16 at 12. Defendant maintains that he had probable cause for Plaintiff's arrest and is thus protected from liability by qualified immunity. *Id.*

---

[3] In considering a Rule 12(b)(6) motion to dismiss, the Court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

3

## DISCUSSION

The purpose of qualified immunity is to protect public officers, including law enforcement, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted).

The Eleventh Circuit teaches that: "As an immunity from suit, qualified immunity is *not* more appropriately resolved at the summary judgment stage or later in the proceedings. To the contrary, our precedents mandate its resolution 'at the earliest possible stage in litigation.'" *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1334 (11th Cir. 2025) (citation modified) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994)).

To establish qualified immunity in a § 1983 claim, the defendant holds the initial burden of showing that they were acting within the scope of their discretionary authority "at the time of the alleged misconduct." *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (citations omitted). Here, it is not disputed that Defendant Bell was acting within the scope of his discretionary authority as a detective for the Lakeland Police Department during his initial investigation into Plaintiff or at the

time of the arrest. Dkt. 1 ¶ 7 (stating that Defendant "was at all times relevant to this Complaint duly appointed and acting as a detective for the City of Lakeland/Lakeland Police Department"); *see* Dkt. 16 at 1–3.

Once it has been established that a defendant was acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Paez*, 915 F.3d at 1284 (citations omitted). To do so, the plaintiff must establish that "(1) [the defendant] violated a federal statutory or constitutional right, and (2) the unlawfulness of [the defendant's] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U. S. 658, 664 (2012)).

## I. Violation of a Constitutional Right

To defeat a claim of qualified immunity, Plaintiff must first establish that there was a violation of a constitutional right. *Id.* In his Complaint, Plaintiff alleges that certain constitutional rights have been violated, specifically mentioning the Fourth Amendment. Dkt. 1 ¶ 1, 33. For Plaintiff to successfully allege a § 1983 malicious prosecution claim, he must prove a violation of the "Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). If the conduct alleged did not violate Plaintiff's Fourth Amendment right against unreasonable seizures, Defendant Bell is "entitled to qualified immunity and the suit must be dismissed." *Paez*, 915 F.3d at 1285.

5

Under the Fourth Amendment, "[a]n arrest made without probable cause is an unreasonable seizure." *Id.* "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." *Id.* at 1286 (citation modified). Further, there is an even lower bar in certain cases of qualified immunity—for example, an arresting affidavit must only demonstrate mere *arguable probable cause* for the arresting officer to be entitled to qualified immunity. *Id.* at 1288.

However, the factual showing of arguable probable cause must also be truthful. *Id.* at 1286. "This does not mean 'truthful' in the sense that every fact recited in the . . . affidavit is necessarily correct . . . [but] surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 1286–87 (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

Thus, both arguable probable cause and truthfulness are central to the Court's determination of qualified immunity in this case.

    a. Arguable Probable Cause

As compared to probable cause, *arguable probable cause* requires "only that a reasonable officer in the same position with the same information as [the Defendant] 'could have believed that probable cause existed.'" *Martelli v. Knight*, 855 F. App'x 621, 623–24 (11th Cir. 2021) (quoting *Grider v. City of Auburn*, 618

F.3d 1240, 1257 (11th Cir. 2010)). However, an "arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Although an officer is not required to eliminate all possibilities through their investigation, they may not turn "a blind eye to immediately available exculpatory information." *Kingsland*, 382 F.3d at 1229, n.10; *see Daniels v. Bango*, 487 Fed. App'x 532, 538–39 (11th Cir. 2012) (holding that an arresting officer may not perform a mere cursory investigation when "a few more simple steps" would clarify certain facts or reconcile inconsistencies).

Here, Plaintiff contends that Defendant lacked arguable probable cause when he arrested Plaintiff for grand theft. Dkt. 1 ¶ 29. In Florida, theft is defined as follows: "A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently deprive the other person of a right to the property or a benefit from the property." Fla. Stat. § 812.014(1)(a) (citation modified). Such an action becomes grand theft when the property at issue is worth more than $750. Fla. Stat. § 812.014(2)(c).

Regarding the underlying allegation of theft, the Complaint alleges Ms. Storer informed Defendant that certain equipment was stolen from her by Plaintiff after it was stored on Plaintiff's property. Dkt. 1 ¶ 10; Dkt. 16-1 at 2. When Defendant took a statement from Mr. Kitto, he said that Ms. Storer had claimed the equipment was

7

owned by someone else. Dkt. 1 ¶ 12(f). When discussing this with Ms. Storer, she admitted to Defendant that she had lied previously and that she and her husband did own the equipment. *Id.* ¶ 13. A copy of Plaintiff's text message to Ms. Storer was then provided to Defendant, appearing to show Plaintiff stating: "Oh no I did i [sic] say that whoops I said that I sold your stuff silly me...I love social media..." Dkt. 16-1 at 5. It is then alleged that Defendant did not further investigate the matter of ownership. Dkt. 1 ¶ 14–17.

Although these facts must be viewed in the light most favorable to Plaintiff, it must be reiterated that the arguable probable cause standard is objective—could a reasonable officer in the same position with the same information have believed that probable cause existed? Here, Defendant pursued an investigation into ownership by interviewing Ms. Storer and learned that she made a contradictory statement to Mr. Kitto. Based on this information, Defendant conducted a follow-up interview with Ms. Storer, during which she confirmed ownership. Defendant then received the aforementioned text message sent by Plaintiff, which, on its face, appears to be consistent with the theme that the equipment was owned by the Storers. Although this is far from conclusive proof of ownership, the Court finds that Defendant had at least arguable probable cause regarding Plaintiff's alleged theft, and that Defendant took reasonable steps to investigate whether Ms. Storer owned the property.

As to the value of the property allegedly stolen, the Complaint alleges Defendant received information regarding the value of the equipment from both Ms. Storer and Mr. Kitto. Dkt. 1 ¶¶ 10, 12. While Ms. Storer allegedly reported to Defendant that the property at issue was valued at $36,000, Mr. Kitto told Defendant that it was "not worth more than $3,000." *Id.* ¶¶ 10(h), 12(e). The Court finds that Defendant had at least arguable probable cause regarding the value of the property, as both values given to him were well above the $750 requirement for grand theft in Florida. Fla. Stat. § 812.014(2)(c). That some of the equipment was being offered at the commercial auction site supports this value.

Therefore, even after accepting the factual allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that a reasonable officer in the same position with the same information as Defendant could have believed that probable cause existed, and thus Defendant had sufficient arguable probable cause for the arrest.

### b. *Truthfulness*

Next, arguable probable cause must also be established upon a *truthful* recitation of the underlying facts in the probable cause affidavit. *Paez*, 915 F.3d at 1286. Mere negligent misstatements or omissions are not sufficient to be considered untruthful—the affiant must make "[i]ntentional or reckless material misstatements or omissions." *Id.* at 1287. The Eleventh Circuit has determined that a Fourth

9

Amendment violation only exists in such a situation if (1) the Defendant made the misstatement or omission intentionally or with reckless disregard for the truth; and if (2) the misstatement or omission was material—that arguable probable cause would be negated if such information was either properly removed or included. *Paez*, 915 F.3d at 1287.

Here, Plaintiff contends that Defendant made the following misstatements and omissions in the arresting affidavit: Defendant misstated that Plaintiff "refused to give an interview;" Defendant omitted Mr. Kitto's alternative valuation of under $3,000; and Defendant omitted that Ms. Storer advised Plaintiff that the equipment was not her property. Dkt. 1 ¶ 18.

As to Defendant's alleged misstatement about Plaintiff's refusal to give an interview—according to the Complaint, on April 18, 2022, Plaintiff's attorney advised Defendant that Plaintiff would not give an interview without the attorney present. *Id.* ¶ 16(c) ("Det. Bell called Mr. Troiano back and he advised Mr. Clark would give [a] statement but only with Mr. Troiano present."). Following this exchange, there were some attempts by both parties to arrange an interview with Plaintiff, but this never materialized due to Defendant's alleged failure to follow up with Plaintiff's attorney. *Id.* ¶ 16. The Court finds that Defendant's statement in the affidavit that Plaintiff "refused to give an interview" was perhaps carelessly worded, Dkt. 16-1 at 2, but was not a misstatement—Plaintiff may not have refused outright,

10

but he did refuse if his attorney was not present. Even if this was a misstatement, there is no evidence of intentionality or materiality. If this statement was removed, it would have no bearing on the finding that Defendant had arguable probable cause. Thus, this alleged misstatement did not violate Plaintiff's Fourth Amendment right against unreasonable seizure.

As to Defendant's omission of Mr. Kitto's alternative valuation of under $3,000—the Court finds no evidence of intentionality or materiality. If this valuation was additionally included in the affidavit, it would have no bearing on the finding that Defendant had arguable probable cause, as this figure is still well above the $750 requirement for grand theft in Florida. Fla. Stat. § 812.014(2)(c). This omission thus did not violate Plaintiff's Fourth Amendment right against unreasonable seizure.

As to Defendant's omission that Ms. Storer initially advised Plaintiff that the equipment in question was not her property, the Court finds no evidence of intentionality or materiality. Although this creates an inconsistency, Defendant pursued this inconsistency by re-interviewing Ms. Storer and receiving confirmation of her ownership, as well as by receiving Plaintiff's text message. If this alleged admission by Ms. Storer was included in the affidavit, it would have no effect on Defendant's arguable probable cause, as Defendant worked to reconcile this inconsistency through further investigation. This omission thus did not violate Plaintiff's Fourth Amendment right against unreasonable seizure. And the

contemporaneous text message from Plaintiff to Ms. Storer is an admission by Plaintiff that "whoops I said that I sold your stuff silly me."

Therefore, even after accepting the factual allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that any misstatements or omissions that Defendant may have made were not sufficiently material to violate the Fourth Amendment. Thus, the allegations of misstatements or omissions do not defeat Defendant's qualified immunity.

## II.   "Clearly Established" Unlawfulness

To defeat a claim of qualified immunity, Plaintiff must establish both that there was a violation of his constitutional rights and that the unlawfulness of Defendant's conduct was "clearly established" at the time of the arrest. *Paez*, 915 F.3d at 1284. Because the Court has concluded that Defendant did not violate Plaintiff's constitutional rights, there is no need to address the "clearly established" prong. *Id.*

In sum, the Court finds that Defendant had at least arguable probable cause to arrest Plaintiff, and that any misstatements or omissions did not rise to the level of a Fourth Amendment violation. The "clearly established" nature of Defendant's actions is immaterial, as there was no constitutional violation. Even viewing the allegation of malicious prosecution in the light most favorable to Plaintiff, the Court finds that Defendant Bell is protected from liability by qualified immunity. Therefore, Plaintiff has failed to state a claim upon which relief can be granted, and

the Court grants Defendant's Motion to Dismiss the § 1983 malicious prosecution claim.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Dismiss (Dkt. 16) is **GRANTED**; and

2. Plaintiff Clark's claim against Defendant Bell in Count 1 (§ 1983 malicious prosecution) is **DISMISSED**.

**DONE AND ORDERED** at Tampa, Florida, on September 19, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record